NOTICE
Decision filed 11/30/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190320-U

NO. 5-19-0320

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 88-CF-162 |
| | ) | |
| RICHARD C. NITZ, | ) | Honorable |
| | ) | Jeffrey A. Goffinet, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justice Welch concurred in the judgment.
Justice Wharton specially concurred.

**ORDER**

¶ 1    *Held*: The trial court did not err in finding that postconviction counsel complied with the requirements of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) where counsel consulted with the defendant to ascertain his contentions of deprivation of constitutional rights, reviewed the portions of the record relevant to the defendant's contentions, and amended the defendant's petition to add a claim of ineffective assistance of counsel.

¶ 2    The defendant appeals from the trial court's order finding that postconviction counsel, Aviva Futorian, complied with the requirements of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) and the court's reentry of the order denying the defendant's successive petition for postconviction relief. For the reasons that follow, we affirm.

1

¶ 3                                    BACKGROUND

¶ 4     The defendant, Richard Nitz, was convicted of first degree murder following an initial trial in 1988 and a retrial in 1998. At the defendant's retrial, the trial court conducted an individual *voir dire* examination of each potential juror. Bart Masters was one of those jurors. Bart stated that he was away in the military at the time of the murder and did not personally know anything about the case aside from what he had heard on television and read in a newspaper article. He further stated that he never talked to anyone about the case or heard the case discussed in his presence. Bart indicated that he could set aside information he received outside the courtroom and decide the case only on the evidence presented at trial. Bart also indicated that he would give the defendant the presumption of innocence. Upon further questioning, Bart confirmed that his brother, Brett Masters, was part of a group of campers who found the victim's body. Bart stated that Brett had "mentioned something" about this, but Bart "didn't think nothing of it." Ultimately, Bart was selected to serve on the defendant's jury and was the jury foreman.

¶ 5     The defendant was found guilty of first degree murder and sentenced to life imprisonment. At sentencing, the trial court stated, "The court believes that Mr. Nitz was dangerous when he murdered [the victim] and is still dangerous." Following the sentencing hearing, Bart sent a letter to the trial judge. The trial judge read the first line of the letter, realized it was from a juror, and gave the letter to another circuit judge who placed it under seal in the court file. In that letter, Bart stated, "I recently learned of the sentence that you handled [*sic*] down in this case. I too, thought that Mr. Nitz was a danger to society 10 years ago and is still a threat."

2

¶ 6     Thereafter, without any knowledge regarding the letter, the defendant filed a motion to reduce or modify his sentence, as well as a motion to reconsider the defendant's posttrial motion for a new trial. On October 7, 1998, the trial judge held a conference call with the State and trial counsel, John O'Gara,[1] prior to the hearing on the defendant's postsentencing motions. The record reveals that during this conference call, the trial judge informed O'Gara and the State about the letter the judge had received from Bart. At that time, the trial judge had not read the letter. The record further indicates that copies of the letter were made and delivered to O'Gara and the State prior to the hearing on the defendant's postsentencing motions. During the hearing, O'Gara did not seek to amend the defendant's motion to reconsider or make any argument regarding the Bart Masters letter. The trial court denied the defendant's postsentencing motions, and the defendant appealed.

¶ 7     On appeal, the defendant argued, *inter alia*, that the Bart Masters letter indicated predisposition, bias, or prejudice during *voir dire*. This was the first time the defendant raised an issue regarding the Bart Masters letter. This court affirmed the defendant's conviction but modified his sentence to a 60-year prison term in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *People v. Nitz*, 319 Ill. App. 3d 949 (2001). In an unpublished portion of the opinion, this court found that the language in the letter merely parroted comments made by the trial judge at the defendant's sentencing and provided no basis to believe that Bart had lied during *voir dire*. *Nitz*, 319 Ill. App. 3d at 957 (unpublished text under Supreme Court Rule 23).

---

[1]The record reveals that the defendant was represented by both O'Gara and Futorian at his retrial and that O'Gara was lead counsel.

¶ 8    On April 9, 2002, while the appeal of his second trial was still being considered by the reviewing courts, the defendant filed, pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2000)), a "*Pro Se* Petition for Post-Conviction Relief and Request for Appointment of Counsel" (*pro se* petition). In his *pro se* petition, the defendant made various claims of constitutional deprivation, including juror bias. In one claim, the defendant alleged that Bart lied during *voir dire*. The defendant asserted:

> "Mr. Masters' letter *** indicates that he answered falsely on *voir dire* about a matter affecting potential bias or prejudice. Although Masters claimed not to know anything about the case from 1988 and not to have formed an opinion about the guilt of Mr. Nitz, his post-trial letter to [the trial judge] indicates that he had already formed an opinion before trial, and had lied about it in *voir dire* when he said that he 'thought that Mr. Nitz was a danger to society 10 years ago and is still a threat.' "

The next day, the trial court summarily dismissed the defendant's *pro se* petition. The defendant appealed, and this court affirmed the lower court's ruling. *People v. Nitz*, 354 Ill. App. 3d 1186 (2005) (table) (unpublished order under Supreme Court Rule 23).

¶ 9    On December 3, 2003, our supreme court issued a supervisory order directing this court to vacate its judgment in *People v. Nitz*, 319 Ill. App. 3d 949 (2001), and reconsider our decision regarding the defendant's sentence in light of subsequent supreme court cases addressing *Apprendi*. *People v. Nitz*, 206 Ill. 2d 637 (2003) (supervisory order). On March 5, 2004, this court issued an unpublished order finding that any *Apprendi* error was

4

harmless beyond a reasonable doubt. *People v. Nitz*, 345 Ill. App. 3d 1167 (2004) (table) (unpublished order under Supreme Court Rule 23).

¶ 10 On May 26, 2004, our supreme court issued a second supervisory order directing this court to enter one published decision disposing of all issues in the defendant's appeal. *People v. Nitz*, 209 Ill. 2d 594 (2004) (supervisory order). On November 4, 2004, this court affirmed the defendant's conviction and once again sentenced the defendant to a 60-year prison term based on this court's *Apprendi* analysis. *People v. Nitz*, 353 Ill. App. 3d 978 (2004). In an unpublished portion of the opinion, this court restated its holding that the language in the Bart Masters letter merely parroted comments made by the trial judge at the defendant's sentencing and provided no basis to believe that Bart had lied during *voir dire*. *Nitz*, 353 Ill. App. 3d at 985 (unpublished text under Supreme Court Rule 23).

¶ 11 On April 20, 2006, the supreme court affirmed the defendant's conviction but overturned this court's modification of sentence. The supreme court reimposed the trial court's sentence of life imprisonment. In its opinion, the supreme court addressed the juror bias argument that was in part based on the Bart Masters letter. The supreme court found that any argument regarding the Bart Masters letter was procedurally defaulted because the defendant had an opportunity to raise the matter with the trial court at the hearing on October 7, 1998, but failed to do so. *People v. Nitz*, 219 Ill. 2d 400, 423-24 (2006).

¶ 12 On November 13, 2007, the defendant filed a "Motion for Leave to File Second Petition for Post-Conviction Relief and Other Appropriate Relief" (motion for leave to file

5

a successive petition).[2] In this motion, the defendant contended that our supreme court's ruling that any issue concerning the Bart Masters letter was procedurally defaulted voided the prior decisions of this court and gave rise to a claim of ineffective assistance of counsel. The defendant requested that he be allowed to file a successive petition for postconviction relief presenting the claims set forth in the defendant's *pro se* petition. The defendant also sought to add a claim of ineffective assistance of trial counsel because O'Gara did not raise any issue regarding the Bart Masters letter with the trial court when O'Gara became aware of the letter. The motion was signed by Futorian but also listed attorney Charles Schiedel as counsel for the defendant. The trial court denied the defendant's motion for leave to file a successive petition, and the defendant appealed.

¶ 13 On appeal, this court found that an evidentiary hearing was the appropriate procedure to determine the relevancy of the Bart Masters letter and whether Bart testified falsely during *voir dire* when he claimed that he would be impartial and afford the defendant the presumption of innocence. This court reversed the trial court's denial of leave to file a successive postconviction petition and remanded the cause for further proceedings. *People v. Nitz*, 399 Ill. App. 3d 1252 (table) (2010).

¶ 14 On remand, the trial court held an evidentiary hearing on May 27, 2011. The defendant was represented by three attorneys, Futorian, Schiedel, and Timothy Capps. Bart

---

[2]On July 9, 2007, the defendant had filed a "Motion for Leave to File Second Petition for Post-Conviction Relief" which had a copy of the defendant's original *pro se* petition attached. The motion contended that the supreme court's finding concerning the Bart Masters letter was incorrect because the letter had not been made available to trial counsel before the October 7, 1998, motion hearing. Following a hearing, counsel withdrew the July 2007 motion after realizing the record contradicted the allegations in the motion.

was called as a witness and questioned by Capps. Bart testified and explained that he was selected as the jury foreman; that he learned his brother Brett found the victim's body; that Bart had not discussed the discovery of the victim's body with Brett; what Bart meant when he wrote the letter to the trial judge; and that Bart did not have any preconceived notions about the defendant's guilt before he heard the evidence at trial.

¶ 15    At the conclusion of Bart's testimony, the trial court found Bart to be a credible witness. The court also found that the evidence established that Bart testified truthfully during *voir dire* that he would be fair and impartial and that he would give the defendant the presumption of innocence. The trial court denied the relief requested in the successive petition. The defendant appealed.

¶ 16    On appeal, the defendant raised an issue of whether his postconviction counsel failed to provide reasonable assistance for not adequately questioning Bart about any bias he harbored toward the defendant. The defendant argued that Bart's brother, Brett, was a remote suspect. Bart also had another brother, Mark Masters.[3] The defendant alleged that Mark was associated with, and had a motive to murder, the victim. The defendant further alleged that Bart's brothers were two very good reasons for Bart to try to ensure that his family's name and honor would be exonerated, and that he had the opportunity to attain that exoneration by convicting the defendant.

---

[3]The common law record contains numerous police reports which included an interview of Mark. The report indicated that Mark was familiar with the victim but was unable to provide any relevant information about the case.

¶ 17    At the State's request, this court allowed the State to supplement the record with a Rule 651(c) certificate prepared by Futorian. Her certificate provided that she had consulted with the defendant by telephone to ascertain his contentions of deprivation of constitutional rights, examined the record of proceedings at trial, and prepared the defendant's petition in a manner that provided an adequate presentation of his contentions of error. The defendant challenged the veracity of Futorian's representations with his own affidavit. The defendant also filed affidavits from Futorian and Schiedel which detailed their lack of knowledge as to Mark's police interview. The defendant requested a limited remand so that the dispute could be resolved.

¶ 18    After determining that a limited remand was appropriate, this court ruled as follows:

"If the trial court finds that postconviction counsel adequately complied with Rule 651(c) in consulting with the defendant, reviewing the record, and amending the petition, no additional proceedings will be necessary and an order should again be entered denying the successive postconviction petition. If, however, the court finds that postconviction counsel did not comply with Rule 651(c), the defendant should be allowed to plead anew and a new hearing should be conducted on the successive postconviction hearing." *People v. Nitz*, 2013 IL App (5th) 110271-U, ¶ 36.

¶ 19    On remand, pursuant to this court's directive, the trial court held a hearing. Futorian was called as a witness and testified that she began representing the defendant in 1992 for his postconviction petition following his first trial. When questioned about the defendant's successive petition, Futorian testified that she talked with the defendant on the phone "at

8

least five times, maybe ten" and discussed his concerns, including Bart and his letter. Regarding her review of the record, Futorian testified that she read the common law record "very thoroughly in 1992-'93" but did not read it carefully before the defendant's retrial or "before the postconviction petition." Regarding the amendment to the defendant's *pro se* petition, Futorian testified that in addition to the claims raised by the defendant in his *pro se* petition, she added a claim regarding ineffective assistance of trial counsel because O'Gara failed to raise the issue of the Bart Masters letter with the trial court. Futorian also testified that she was unaware of Mark's police interview at the time of the May 27, 2011, evidentiary hearing. Futorian indicated that had she known about Mark's interview, Bart would have been questioned about his brother, Mark. Futorian further indicated that the issue concerning Mark was not discovered until the defendant's appellate attorney raised the issue in the appellate court (see *Nitz*, 2013 IL App (5th) 110271-U). The defendant did not testify.

¶ 20    On January 30, 2017, the trial court issued an order finding that Futorian complied with Rule 651(c) and reentered the order denying the relief requested in defendant's successive petition. The trial court specifically found that Futorian had examined the pertinent portions of the record, had amended the defendant's *pro se* petition as necessary, and had consulted with the defendant regarding his contentions of error no less than five times by telephone. The defendant appealed.

¶ 21    On appeal, this court vacated the trial court's judgment and remanded because the trial court had required the defendant to proceed *pro se* at the previous limited remand hearing. This court did not address the defendant's alternative argument that the trial court

erroneously concluded that Futorian complied with Rule 651(c). *People v. Nitz*, 2018 IL App (5th) 170074-U.

¶ 22    On June 14, 2019, the trial court held a second hearing on whether Futorian had complied with Rule 651(c). Futorian again testified that she thoroughly reviewed the record when she began representing the defendant in postconviction proceedings in 1992. Futorian was also the second chair in the defendant's retrial. Futorian stated that before the defendant's retrial, she believed that she read the transcript of the defendant's first trial. She further stated that she did not read the police files or "go over what [she] had gone over in *** 1992." Futorian confirmed that she was appointed as postconviction counsel for the defendant in 2002 or 2003. Futorian testified that she did not recall reviewing any of the record aside from the transcript of the retrial between 2002 and the filing of the motion for leave to file a successive petition in 2007. Futorian further testified that when she learned of the Bart Masters letter, she reviewed the transcript of Bart's *voir dire*. Regarding Mark's police interview, Futorian admitted that had she been aware of the interview, she would have provided that information to Capps when he examined Bart at the evidentiary hearing on May 27, 2011. Finally, Futorian confirmed that she consulted with the defendant to ascertain his contentions of constitutional deprivation and prepared the motion for leave to file a successive petition to address those issues. The defendant did not testify.

¶ 23    On June 19, 2019, the trial court entered an order finding that Futorian had testified, unrebutted, to her regular communications with the defendant. The trial court further found that Futorian amended the defendant's *pro se* petition by filing the motion for leave to file

10

a successive petition, with a copy of the proposed successive petition attached. The trial court also found that Futorian had adequately examined the record. The trial court noted that Futorian was a credible witness and that no contrary evidence was offered. The trial court concluded that Futorian complied with the requirements of Rule 651(c) and reentered the order denying the relief requested in the defendant's successive petition. This appeal followed.

¶ 24                                    ANALYSIS

¶ 25    The defendant was granted a limited remand hearing so that a proper record could be made regarding the assertions made by Futorian in her Rule 651(c) certificate. Here, the defendant contends that Futorian failed to comply with Rule 651(c) and provide reasonable assistance in that she failed to review the relevant portions of the record and failed to amend the defendant's *pro se* petition "to fully present the claim that juror foreman Bart Masters lied to get on the jury." We disagree.

¶ 26    A defendant has no constitutional right to counsel in postconviction proceedings, and is guaranteed only the level of assistance provided for by the Act. *People v. Johnson*, 2018 IL 122227, ¶ 16. While the Act does not explicitly provide for any particular level of assistance, it is well settled that defendants are only entitled to a reasonable level of assistance. *Johnson*, 2018 IL 122227, ¶ 16. To that end, Rule 651(c) outlines the specific duties of postconviction counsel who represent defendants in amending their *pro se* petitions. Under Rule 651(c), postconviction counsel must file a certificate stating that counsel has (1) consulted with the defendant to ascertain his or her contentions of deprivation of constitutional rights, (2) examined the record of the proceedings at the trial,

11

and (3) amended the defendant's *pro se* petition, if necessary, to ensure the defendant's contentions are adequately presented. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). Strict compliance with Rule 651(c) is not required, rather substantial compliance is sufficient. *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008).

¶ 27　Postconviction counsel's filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. It is the defendant's burden to overcome this presumption by demonstrating counsel's failure to substantially comply with the requirements of Rule 651(c). *Profit*, 2012 IL App (1st) 101307, ¶ 19. Review of whether postconviction counsel substantially complied with Rule 651(c) is *de novo*. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 28　At the outset, we note that in this appeal, the defendant has not argued that Futorian failed to consult with the defendant to ascertain his asserted deprivations of constitutional rights. Indeed, Futorian's testimony establishes that she consulted with the defendant multiple times. The defendant contends, however, that Futorian failed to comply with Rule 651(c) because she did not review the common law record in preparation of the defendant's motion for leave to file a successive postconviction petition which, in turn, led to a failure to amend the defendant's *pro se* petition to address Mark's police interview. The defendant argues that evidence concerning Mark's involvement in the case "would have more fully presented the claim that Bart lied and was necessary to properly examine Bart's potential motive to lie to get on the jury."

12

¶ 29 Postconviction counsel is only required to investigate and properly present the defendant's claims. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Postconviction counsel is not required to comb the record for issues not raised in the defendant's *pro se* postconviction petition. *People v. Rials*, 345 Ill. App. 3d 636, 641 (2003). A postconviction petitioner is not entitled to the advocacy of counsel for the purposes of exploration, investigation, and formulation of potential claims. *People v. Davis*, 156 Ill. 2d 149, 163 (1993). While postconviction counsel may conduct a broader examination of the record, and may raise additional claims if counsel so chooses, counsel has no obligation to do so. *Pendleton*, 223 Ill. 2d at 476.

¶ 30 The defendant's *pro se* petition asserted that the Bart Masters letter indicated that Bart answered falsely during *voir dire* about a matter affecting potential bias or prejudice. Futorian's testimony establishes that she reviewed the Bart Masters letter and the transcript of Bart's *voir dire* to prepare for the motion for leave to file a successive petition. The motion contained a request that the trial court allow the filing of a successive petition setting forth the claims in the defendant's original *pro se* petition. The motion for leave to file a successive petition was crafted to add a claim of ineffective assistance of counsel for O'Gara's failure to raise the Bart Masters letter issue with the trial court.

¶ 31 The record establishes that Futorian substantially complied with the mandates of Rule 651(c) as it related to the defendant's claim—that the Bart Masters letter indicated predisposition, bias, or prejudice. Futorian consulted with the defendant to ascertain his alleged deprivations of his constitutional rights; reviewed the relevant portions of the

record related to the defendant's contentions; and made a necessary amendment to the *pro se* petition by seeking to add a claim of ineffective assistance of counsel.

¶ 32    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 33    Affirmed.

¶ 34    JUSTICE WHARTON, specially concurring:

¶ 35    I agree with the majority that Futorian complied with the requirements of Rule 651(c) in representing the defendant in proceedings on his second postconviction petition. As the majority correctly points out, the right to postconviction counsel is a matter of legislative grace, not a constitutional right. *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). For this reason, postconviction petitioners are entitled only to the level of assistance guaranteed under the Post-Conviction Hearing Act—that of reasonable assistance. *Johnson*, 2018 IL 122227, ¶ 16. Because Futorian provided the level of assistance mandated under the Act, I concur with the result reached by the majority. I write separately to express my belief that the required "reasonable" level of assistance is not well-suited to the unusual circumstances of this case—where postconviction counsel also represented the defendant at trial.

¶ 36    Here, Futorian represented the defendant in proceedings on his previous, successful postconviction petition. She then represented him in his second trial. At that time, she was obligated to provide representation meeting the constitutionally-mandated standard of effective assistance. She concedes that she did not fully review the existing record in

14

preparing for that trial. Such review likely would have revealed the fact that Mark Masters was interviewed by police investigating the murder. Had Bart Masters's relationship to both Mark and Brett been fully investigated, Bart could have been more thoroughly questioned during *voir dire*, which mostly likely would have led to him being excused. The lower standard of representation applicable in postconviction proceedings thus potentially shields an attorney's mistakes during trial from review.

¶ 37 A second reason that the reduced standard of representation applicable in a postconviction proceedings is ill-suited to the circumstances of this case is that it deprives a defendant of the benefit of a prior trial attorney's familiarity with the trial proceedings. Here, the defendant alleged in his *pro se* petition only that Bart Masters's letter demonstrated that he had a preconceived view of the defendant's guilt. It is generally reasonable for postconviction counsel to review only those portions of the record necessary to adequately present that specific claim. See *Pendleton*, 223 Ill. 2d at 472. However, where postconviction counsel also served as trial counsel, that attorney should be more familiar with what occurred at trial. Under such circumstances, it may not be reasonable to overlook additional issues that counsel is—or should be—aware of. Yet, counsel is not required to raise such issues.

¶ 38 For these reasons, I believe that the standard of reasonable assistance, including the limited duty to review only so much of the record as is necessary to present the specific claims raised by the defendant in a *pro se* petition, is at odds with the level of representation an attorney in Futorian's position realistically should be able to provide under the circumstances of this case. However, unless and until the legislature amends the Post-

15

Conviction Hearing Act to address this unusual set of circumstances, postconviction counsel need only comply with Rule 651(c) in order to provide reasonable assistance. Because I believe Futorian satisfied the rule's requirements, I concur in the majority's opinion in spite of my misgivings over the appropriateness of this standard under the circumstances of this case.